# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4029 | **DATE** | 7/31/2002 |
| **CASE TITLE** | Atkins vs. John E. Potter | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant's motion for summary judgment is granted in part and denied in part. The motion is denied as to Counts I and II, and granted as to Counts III through V. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| ✓ | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | AUG - 2 2002 | |
| | Notified counsel by telephone. | | date docketed | 28 |
| | Docketing to mail notices. | U.S. DISTRICT COURT CLERK | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| SLB | courtroom deputy's initials | 02 AUG -1 AM 9:11 | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
AUG 2 2002

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DENYCE K. ATKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 01 C 4029 |
| v. | ) |
| | ) Judge George W. Lindberg |
| JOHN E. POTTER,[1] Postmaster General, | ) |
| United States Postal Service, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Denyce Atkins brought this action against defendant Postmaster General John E. Potter, alleging discrimination, harassment, and retaliation in violation of the Rehabilitation Act, 29 U.S.C. § 791 et seq.; and race and sex discrimination and harassment, and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e et seq. Before the court is defendant's motion for summary judgment. For the reasons stated below, the motion for summary judgment is granted in part and denied in part.

**I. Plaintiff's Statement of Material Facts**

At the outset, the court notes that much of plaintiff's Statement of Material Facts does not comply with Federal Rule of Civil Procedure 56 or Local Rule 56.1. Local Rule 56.1 provides that the response to the movant's statement "shall contain...a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." LR 56.1(b)(3). Material supporting a response to a motion for summary judgment may

---

[1] Pursuant to Fed. R. Civ. P. 25(d)(1), the court has substituted John E. Potter for William J. Henderson as the named defendant.

28

take the form of a sworn affidavit, an unsworn declaration that subjects the declarant to the penalties of perjury, depositions, answers to interrogatories, or material that would be admissible at trial. See Fed. R. Civ. P. 56(e); 28 U.S.C. § 1746; Woods v. City of Chicago, 234 F.3d 979, 987-88 (7th Cir. 2000), cert. denied, 122 S. Ct. 354 (2001).

Plaintiff's Statement of Material Facts is deficient in several respects. First, plaintiff cites to her own unsworn statements in Postal Service Information for Precomplaint Counseling forms as support for many of the facts in her statement. Because these forms are not sworn affidavits, unsworn declarations that subject plaintiff to the penalties of perjury, or otherwise admissible evidence, the court will disregard them and the facts that rely on them.

Many of plaintiff's remaining statements are not statements of fact, but rather essentially invitations to incorporate by reference five of plaintiff's EEO Investigative Affidavits.[2] This practice contravenes Local Rule 56.1's requirement that parties supply the facts, along with supporting references to the record. This requirement significantly benefits the court, whose role in ruling on a motion for summary judgment "is not to sift through the evidence." See Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Further, this requirement serves the purpose of "alert[ing] the court to precisely what factual questions are in dispute and point[ing] the court to the specific evidence in the record that supports a party's position on each of the questions." Id. at 923. The factual statements and references to the record "are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own." Id.

---

[2] For example: "[EEOC agency] No. 1J6120023-98 encompasses the adverse actions by Darlene Brooks toward Plaintiff between March 12, 1998 and April 3, 1998 described more fully in...Plaintiff's Sept. 7, 1998 Affidavit [DSMF Ex. 2 at 1-3]."

2

Although plaintiff's failure to fulfill its obligation under Local Rule 56.1 would justify this court in disregarding plaintiff's affidavits, in the interest of preventing further delay, the court has nevertheless reviewed them.[3]

## II. Factual Background

Plaintiff, an African-American woman, began working for the Postal Service in 1985, and has been a clerk since 1988. Between 1997 and 2000, plaintiff worked at the AMC O'Hare postal facility in Chicago, Illinois, where she primarily worked on a flat sorter machine. In March 1998, Darlene Brooks was assigned to plaintiff's unit as a supervisor. Shortly thereafter, plaintiff complained that Brooks had accused plaintiff of stopping the flat sorter machine, issued a warning letter for failing to restart the machine (the parties dispute whether starting the machine was part of plaintiff's job), invaded her personal space, shouted at her, discouraged other employees from talking to plaintiff, monitored her closely, and instructed plaintiff not to sit around idly when her machine was stopped.

Between April 1998 and 2000, plaintiff registered various other complaints regarding actions taken by Brooks and other supervisors, which plaintiff views as retaliation for her above complaints about Brooks. For example, she complained that on April 23, 1998, Brooks told plaintiff to punch out early, and to return the next day at her normal starting time. Defendant claims that it took this action after plaintiff refused to follow Brooks' instructions and became disruptive. Although plaintiff claims that she tried to follow Brooks' instructions but was not

---

[3] The court also notes that three of these "affidavits" are missing the certification page that typically accompanies them, in which plaintiff swears to the statement or declares under penalty of perjury that it is true. Although these three forms thus are not properly considered affidavits, the court has included them in its review, since doing so does not change the court's conclusions.

3

given sufficient time to do so, and denies being disruptive, she cites only her own unsworn declaration in support of her position. Therefore, defendant's version is deemed admitted. See LR 56.1(b)(3). After punching out on April 23, 1998, plaintiff did not report for work again until June 1998, even though her leave requests for that period were denied.

According to plaintiff, on July 23, 1998, Brooks sexually harassed her by squeezing past plaintiff, who was working on the flat sorter, rubbing her left hip against plaintiff's right hip in the process, without saying "excuse me" or anything else. Brooks denies inappropriately rubbing against plaintiff. Plaintiff complained to Brooks' supervisor, Melvin Anderson, who then moved plaintiff to a different unit. Plaintiff viewed this transfer as retaliation for her earlier complaints against Brooks.

On September 22 or 23, 1998, plaintiff requested from supervisor Martha Womack four hours of annual leave to go home early. According to defendant, plaintiff made two such requests, both of which Womack denied (one because plaintiff was needed at work and the other because plaintiff did not have sufficient leave). According to plaintiff, Womack gave her verbal permission to leave. Plaintiff left work early, and Womack suspended her for seven days in October 1998 for leaving work without authorization.

Plaintiff also complained that in 1998, Melvin Anderson required her to work on one of her regular days off, and on two days off in 1999. According to defendant, plaintiff was given different days off in return for working her regular days off, and thus she did not work any additional hours. In addition, plaintiff complained that in June 1999, Anderson had listed plaintiff as absent without leave instead of applying leave that had been scheduled and approved.

Other 1999 complaints included plaintiff's complaint that supervisor Dan Christensen

4

told her that she could not take two breaks and that she was taking too long to walk to her work station. She further complained that Christensen disapproved her request for leave to cover time lost when she came to work late. Plaintiff complained that Womack denied various leave requests in April, June, July, and September 1999. Plaintiff also complained that Womack required plaintiff to work in the express mail unit. Plaintiff complained that supervisor Anton Zoch had disapproved a request for leave under the Family Medical Leave Act; plaintiff now admits that Zoch did not deny her request for leave. Finally, plaintiff complained that supervisor Pamela Simmons did not allow plaintiff to play a radio, but allowed other employees to do so.

## III. Discussion

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party bears the initial burden of demonstrating that no material issue exists for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the nonmoving party must offer specific facts demonstrating that a material dispute exists, and must present more than a scintilla of evidence to support its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

### A. Race and Sex Discrimination and Harassment

Defendant contends that plaintiff does not establish a prima facie case of race and sex discrimination and harassment under Title VII, because the actions about which she complains

5

do not constitute materially adverse employment actions, and because she fails to show that similarly situated employees were treated more favorably. Under the McDonnell Douglas burden-shifting analysis, a plaintiff bears the burden of establishing a prima facie case of discrimination by showing that (1) she is a member of a protected class; (2) she was performing her job satisfactorily; (3) she experienced an adverse employment action; and (4) similarly situated employees were treated more favorably. See Hoffman-Dombrowski v. Arlington Int'l Racecourse, Inc., 254 F.3d 644, 650 (7th Cir. 2001). If the plaintiff establishes a prima facie case of discrimination, the employer must then show a nondiscriminatory reason for the employment action. Peele v. Country Mut. Ins. Co., 288 F.3d 319, 326 (7th Cir. 2002). If the employer does so, the plaintiff must then show that the employer's explanation is pretextual. Id.

Defendant first argues that plaintiff fails to meet her burden of establishing a prima facie case because she fails to establish the existence of a materially adverse employment action. Title VII prohibits employers from discriminating against employees with respect to the "terms, conditions or privileges of employment." 42 U.S.C. § 2000e-2(a)(1). This requirement means that the employee "must show that she suffered a materially adverse employment action." Haugerud v. Amery Sch. Dist., 259 F.3d 678, 691 (7th Cir. 2001). An adverse employment action is

> more disruptive than a mere inconvenience or an alteration of job responsibilities. A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation.

Rabinovitz v. Pena, 89 F.3d 482, 488 (7th Cir. 1996) (quoting Crady v. Liberty Nat'l Bank & Trust Co., 993 F.2d 132, 136 (7th Cir. 1993)).

Defendant is correct that a number of the actions about which plaintiff complains would not individually rise to the level of materially adverse employment actions. For example, accusing plaintiff of shutting off a machine; reprimanding her for idleness; monitoring her; shouting at her; invading her personal space; moving her to a different machine; requiring her to leave work early; requiring her to work three of her regular days off in two years, for which she apparently was paid and which apparently did not result in a change of responsibilities; and refusing to let her play a radio at work are not themselves actionable incidents. See, e.g., Sweeney v. West, 149 F.3d 550, 556-57 (7th Cir. 1998) (unfair reprimands, without tangible job consequence, do not constitute an adverse employment action); Place v. Abbott Labs., 215 F.3d 803, 810 (7th Cir. 2000), cert. denied, 531 U.S. 1074 (2001) ("being shifted to an essentially equivalent job that [plaintiff] did not happen to like as much" does not constitute adverse employment action); Mingo v. Roadway Express, Inc., 135 F. Supp. 2d 884, 901 (N.D. Ill. 2001) (undesirable change in work schedule that does not affect salary, title, rank, benefits, or responsibilities does not constitute adverse employment action); Silk v. City of Chicago, 194 F.3d 788, 800 (7th Cir. 1999) ("[m]inor or trivial actions that make an employee unhappy" are not actionable adverse actions).

However, some of the actions about which plaintiff complains could constitute adverse employment actions. For example, plaintiff's seven-day suspension could constitute an adverse employment action. See Biolchini v. General Elec. Co.,167 F.3d 1151, 1154 (7th Cir. 1999) (assuming that one-week disciplinary suspension was a materially adverse employment action). In addition, repeatedly denying requests for leave with pay, resulting in a loss of pay to the extent that an employee has effectively been demoted, could constitute an adverse employment action.

7

See Rabinovitz, 89 F.3d at 488. Finally, ordering other employees not to talk to a co-worker could constitute an adverse employment action, if it rose to the level of shunning. See McKenzie v. Ill. Dep't of Transp., 92 F.3d 473, 485 (7th Cir. 1996).

Defendant also argues that even if plaintiff has established an adverse employment action, she has failed to show that defendant treated plaintiff differently than other similarly situated white or male employees. As to the issue of her suspension, plaintiff need only show that white or male employees who received authorization to leave early were not later suspended for doing so.[4] However, plaintiff offers no proper evidence relating to other employees who left with or without permission. Instead, she merely points to her own statement in an EEO Investigative Affidavit, in which she stated that "On November 2, 1998, Valerie Louis asked [supervisor] Ms. Womack for leave without pay and was granted the leave immediately. Furthermore, Neal Scott left work early on several occasions without permission and has never been disciplined about it." Plaintiff fails to offer evidence that would establish her personal knowledge on the subject of Louis and Scott, or any independent evidence on their movements and disciplinary status. This conclusory statement is not proper evidence in response to a motion for summary judgment. See Fed. R. Civ. P. 56(e).

Nor would the statement suffice to show that other similarly situated employees were treated differently, even if it were proper evidence. The statement fails to indicate the critical detail of Louis's and Scott's race (their first names suggest that Louis is female and Scott is male,

---

[4] Plaintiff claims that her seven-day suspension was unjustified because she had received verbal permission to leave early; defendant claims that plaintiff left work without authorization. The court resolves this conflict in plaintiff's favor for the purpose of defendant's motion for summary judgment.

but this is not spelled out either), state whether Louis was disciplined for leaving with permission, or describe the circumstances of Scott's departures and whether defendant was aware of them.

Nor does plaintiff show that employees were not discouraged from talking to similarly situated white or male employees. Plaintiff points to Brooks' testimony that it would not violate a regulation for keyers to talk to each other while a jam in the machine was being cleared, if they had already fully loaded the machine with mail for when it started again. However, this is not evidence keyers in that situation would not nevertheless be discouraged from talking to each other while a jam was cleared, and it is not established whether plaintiff even was a keyer. Nor does plaintiff present evidence as to whether employees were allowed to talk when their machine was not jammed. Plaintiff states in an affidavit that "other workers" on her shift could talk to each other as long as plaintiff was not included in the conversation, but does not otherwise identify these other workers or indicate their race or gender. Without such comparative evidence, defendant's treatment of one person of a certain race or gender is not especially probative. See Williams v. St. Francis Hosp., 1995 WL 423494, at *9 (N.D. Ill. July 17, 1995).

Nor does plaintiff show that similarly situated white or male employees were treated differently in response to their leave requests. Plaintiff claims that in 1999, Anderson marked her as absent without leave when she had leave scheduled; Christensen refused to allow her to use leave to make up time when she was tardy; and Womack refused to let her leave early on one occasion, marked her has absent without leave when she had called in sick and when she had an approved vacation, and refused to allow her to use leave to make up time when she was tardy. Plaintiff offers no evidence that Anderson treated any other employees differently regarding their

9

leave requests. She points to Christensen's deposition testimony in which he testified that he could not recall the names of any other employees on Tour 3 for whom he disapproved a request to use leave when they were late, but offers no evidence that Christensen specifically treated white or male employees differently. Finally, plaintiff notes that Womack testified in her deposition that she has allowed employees to leave early; Womack was not asked for, and did not provide, the race or gender of these employees. Plaintiff states in an affidavit that Womack allowed an Ophelia Almon to leave work early on May 3, 1999, but does not provide the basis for her knowledge on this point, and does not indicate Almon's race (and judging from her first name, presumably Almon is female).

Because plaintiff has not established that other similarly situated white or male employees were treated differently as to the incidents that may constitute adverse employment actions, these incidents are not actionable. Since plaintiff has failed to establish a prima facie case of harassment, the court need not consider whether defendant's reasons for its actions were legitimate or pretextual.

Plaintiff responds that even if individually, incidents such as accusing plaintiff of shutting off a machine, reprimanding her for idleness, monitoring her, shouting at her, invading her personal space, moving her to a different machine, requiring her to leave work early, requiring her to work on her days off, and refusing to let her play a radio do not amount to adverse employment actions, they show severe or pervasive discrimination and harassment that is actionable, especially if taken together with evidence of plaintiff's suspension, shunning by co-workers, and denials of leave requests. To maintain an actionable claim under a theory that

leave requests. She points to Christensen's deposition testimony in which he testified that he could not recall the names of any other employees on Tour 3 for whom he disapproved a request to use leave when they were late, but offers no evidence that Christensen specifically treated white or male employees differently. Finally, plaintiff notes that Womack testified in her deposition that she has allowed employees to leave early; Womack was not asked for, and did not provide, the race or gender of these employees. Plaintiff states in an affidavit that Womack allowed an Ophelia Almon to leave work early on May 3, 1999, but does not provide the basis for her knowledge on this point, and does not indicate Almon's race (and judging from her first name, presumably Almon is female).

Because plaintiff has not established that other similarly situated white or male employees were treated differently as to the incidents that may constitute adverse employment actions, these incidents are not actionable. Since plaintiff has failed to establish a prima facie case of harassment, the court need not consider whether defendant's reasons for its actions were legitimate or pretextual.

Plaintiff responds that even if individually, incidents such as accusing plaintiff of shutting off a machine, reprimanding her for idleness, monitoring her, shouting at her, invading her personal space, moving her to a different machine, requiring her to leave work early, requiring her to work on her days off, and refusing to let her play a radio do not amount to adverse employment actions, they show severe or pervasive discrimination and harassment that is actionable, especially if taken together with evidence of plaintiff's suspension, shunning by co-workers, and denials of leave requests. To maintain an actionable claim under a theory that

defendant's conduct created a hostile work environment,[5] and thus constituted racial or sexual harassment in violation of Title VII, plaintiff must demonstrate harassment "so severe or pervasive as to alter the conditions of [plaintiff's] employment and create an abusive working environment." Hilt-Dyson v. City of Chicago, 282 F.3d 456, 462 (7th Cir. 2002), petition for cert. filed, 70 U.S.L.W. 3758 (U.S. May 28, 2002) (No. 01-1758). The working environment must be both objectively and subjectively offensive. Id. at 463. Factors relevant to the inquiry of whether conduct creates an objectively hostile work environment include the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. (quoting Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998)). Moreover, a plaintiff must show that the complained-of conduct has a racial or sexual character or purpose. See Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81 (1998); Hilt-Dyson, 282 F.3d at 462; Hardin v. S.C. Johnson & Son, Inc., 167 F.3d 340, 345-46 (7th Cir. 1999).

In this case, it appears that plaintiff subjectively believed her work environment was hostile. However, plaintiff has failed to show that she suffered severe or pervasive harassment with a racial or sexual character or purpose. The only incident that could be seen as having a sexual component is plaintiff's allegation that Brooks rubbed against her while squeezing past, without saying "excuse me." This incident hardly suffices to show severe harassment. See Saxton v. American Tel. & Tel., 10 F.3d 526, 534 (7th Cir. 1993) (isolated instances of unwanted

---

[5] Plaintiff's First Amended Complaint does not explicitly identify her race and sex discrimination and harassment claims as hostile work environment claims. However, based on plaintiff's arguments in her brief in opposition to the motion for summary judgment, the court will construe them as such.

11

sexual advances are not enough to create hostile work environment). The remaining incidents about which plaintiff complains do not implicate negative attitudes toward plaintiff based on her race or gender.

Nor does plaintiff show a racial character or purpose through evidence that others of a different race were treated differently in any of the incidents about which plaintiff complains, or present evidence in most of the incidents that others of a different gender were treated differently. Although she maintains that she was singled out, plaintiff acknowledges that all the employees were told as a group not to shut off the flat sorting machine, and not to take two breaks. Plaintiff states that supervisor Pamela Simmons told both her and Romonica Millsap that no one could play a radio, although she states (without identifying Millsap's race) that Simmons only turned off plaintiff's radio. Plaintiff states that Brooks did not issue a warning letter to Regina Walker for failing to start up a machine, but does not identify Walker's race. Finally, plaintiff claims that Brooks did not follow or monitor any other employee, but does not identify this group by race or gender.

As for plaintiff's complaints of sex discrimination, plaintiff complains of only a few incidents in which she also identifies a man who was treated differently. Plaintiff claims that Anderson and another supervisor required her to work on her day off, but did not require a Tracy Reynolds (whom plaintiff does not identify as a man, but may possibly have a male first name), Job Varghese, and Joel Webb to do so; however, a Mary Coleman also was not required to work. In addition, plaintiff claims that Brooks told plaintiff to load her belt while a jam was being fixed instead of sitting around idly, but did not tell a Ernest Berdin to do so. Finally, plaintiff claims that Womack required plaintiff to work in the express mail unit, but did not require a Kevin

12

Edwards to do so.

Even if plaintiff had shown that any incident was somehow related to her race or gender, however, the incidents she describes are insufficiently severe to give rise to a hostile environment. Since plaintiff has not demonstrated that an objectively reasonable person would have perceived the incidents about which she complains to be so abusive or hostile as to amount to racial or sexual harassment or discrimination, summary judgment is entered for defendant as to Counts III and IV.

**B. Retaliation**

The court next turns to plaintiff's contention that defendant retaliated against her for complaining about Brooks' harassment of her. Plaintiff first complained of Brooks' conduct in a March 13, 1998 statement to her union, when she complained that Brooks had accused her of shutting off a machine. On March 30, 1998, plaintiff filed a form requesting an appointment with an EEO counselor, which alleged that Brooks had accused her of shutting off the machine, discouraged co-workers from talking to her, monitored her at her work station, scolded her for talking to her co-workers, and invaded her personal space. Plaintiff claims that all the subsequent incidents she alleges were in retaliation for these and other complaints.

To survive summary judgment where a plaintiff has no direct evidence of retaliation, under the <u>McDonnell Douglas</u> analytical framework, the plaintiff must first establish a prima facie case of retaliation by demonstrating that (1) she engaged in statutorily protected expression; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) no other similarly situated employee who did not file a complaint was subject to the adverse employment action. See <u>Stone v. City of Indianapolis Pub. Utils. Div.</u>, 281 F.3d 640, 644 (7th

Cir. 2002), petition for cert. filed (U.S. June 28, 2002) (No. 02-16). If the plaintiff makes this showing, the burden shifts to the defendant to state a legitimate reason for the action. See id. If the defendant does so, the burden shifts back to the plaintiff to show that the defendant's stated reason is pretextual. See id.

Defendant does not dispute that plaintiff's complaints were statutorily protected expression, and as the court discussed above, defendant's acts of suspending plaintiff, discouraging co-workers from talking to her, and denying leave requests could constitute materially adverse employment actions. Although defendant contends that plaintiff's retaliation claim fails because plaintiff cannot show a causal link between her complaints regarding Brooks' conduct and defendant's actions, the Seventh Circuit has stated that where a plaintiff is proceeding under the McDonnell Douglas analytical framework, a showing of a causal link is not necessary. See Stone, 281 F.3d at 644.

However, plaintiff has failed to offer evidence that no other similarly situated employee who did not file a complaint of discrimination was suspended, shunned, or denied leave requests. Since plaintiff has failed to establish this element of the prima facie case, her retaliation claim does not survive summary judgment under this analysis. See Hilt-Dyson, 282 F.3d at 465 (the inability to prove even a single element of the prima facie case is fatal to a retaliation claim).

As with her harassment and retaliation claims, plaintiff urges this court to consider the entire course of conduct that she alleges when analyzing her retaliation claim, rather than merely the individual incidents that constitute materially adverse employment actions. Conditions of employment designed to harass an employee in retaliation for protected expression may be actionable. See Hilt-Dyson, 282 F.3d at 466. However, as in the case of hostile environment

14

discrimination, the complained-of conduct must be severe and pervasive to be actionable. See id. This court has already concluded that the incidents plaintiff alleges are not sufficiently severe and pervasive to be actionable. Accordingly, summary judgment is entered in favor of defendant on plaintiff's retaliation claim in Count V.

Finally, although defendant asks the court to enter judgment in defendant's favor on all counts, defendant has made no argument regarding Counts I and II, brought under the Rehabilitation Act. Therefore, defendant's motion for summary judgment is denied as to Counts I and II.

**ORDERED:** Defendant's motion for summary judgment is granted in part and denied in part. The motion is denied as to Counts I and II, and granted as to Counts III through V.

ENTER:

*[signature]*

George W. Lindberg
Senior United States District Judge

DATED: JUL 3 1 2002