

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | George W. Lindberg | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 01 C 4029 | DATE | 10/2/2002 |
| CASE TITLE | Denyce K. Atkins vs. John E. Potter | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due _____. Reply to answer brief due _____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
     ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion for summary judgment is granted. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required, advised in open court | | | number of notices | |
| | No notices required. | | | | |
| | Notices mailed by judge's staff. | | | OCT 0 4 2002 | 38 |
| | Notified counsel by telephone. | | | date docketed | |
| ✓ | Docketing to mail notices. | | | | |
| ✓ | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| | | | | date mailed notice | |
| SLB | courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DENYCE K. ATKINS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 01 C 4029 |
| v. | ) | |
| | ) | Judge George W. Lindberg |
| JOHN E. POTTER, Postmaster General, | ) | |
| United States Postal Service, | ) | |
| | ) | |
| Defendant. | ) | |

DOCKETED OCT 4 2002

## MEMORANDUM OPINION AND ORDER

Before the court is defendant's second motion for summary judgment. This motion seeks judgment on Counts I and II of plaintiff's amended complaint,[1] which allege discrimination, harassment, and retaliation in violation of the Rehabilitation Act, 29 U.S.C. § 791 et seq. For the reasons stated below, the motion for summary judgment is granted.

### I. Plaintiff's Statement of Material Facts

As a preliminary matter, the court must consider defendant's argument that much of plaintiff's Statement of Material Facts is not supported with admissible evidence. Defendant takes issue with plaintiff's declaration (plaintiff's exhibit 25), which defendant contends should not be used to support plaintiff's claim that she was treated differently than her fellow employees. The court agrees that portions of plaintiff's declaration do not comply with the rules governing summary judgment motions.

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth

---

[1] On July 31, 2002, this court granted defendant's motion for summary judgment as to the remaining counts of plaintiff's amended complaint. The court granted defendant leave to file a second motion for summary judgment on August 6, 2002.

38

such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). Absent supporting evidence, "[c]onclusory allegations by the party opposing [a summary judgment] motion cannot defeat the motion." Aberman v. J. Abouchar & Sons, Inc., 160 F.3d 1148, 1150 (7th Cir. 1998) (quoting Smith v. Shawnee Library Sys., 60 F.3d 317, 320 (7th Cir. 1995)).

The statements in plaintiff's declaration regarding how supervisors treated employees other than plaintiff lack foundations that show how this information was within plaintiff's personal knowledge. For example, in one paragraph of the declaration, plaintiff states that "Brooks instructed employees Toya Neal-Scott and Tia Holmes to work overtime but they failed to do so and did not receive any discipline."[2] In another paragraph, plaintiff states that "[a] part-time sub-clerk, Regina Walker (black, female, non-disabled) and other employees such as Toya Neal-Scott (black, female, non-disabled), repeatedly refused SDO Brooks' same instructions on or about March 17, and March 24, 1998 but did not receive Letters of Warnings [sic] from SDO Brooks." The following paragraphs contain such deficient statements: 4, 6, 8, 9, 10, 11, 12, 14, 15, 16, 17, 20, 21, 22, 23, 25, 26, 27, 28, 31, 32, 34, 36, 37, 38, 39, 40, 41, 43, 44, 48, 50, 53, 54, 55, and 56. Although the court is mindful that pro se pleadings should be given a liberal construction, see Hudson v. McHugh, 148 F.3d 859, 864 (7th Cir. 1998), these deficiencies are not mere technicalities that the court can overlook. Accordingly, the court will disregard plaintiff's statements of fact that cite as support the deficient portions of plaintiff's declaration.

However, plaintiff's entire declaration does not suffer from these deficiencies. Some portions of the declaration offer evidence that is within plaintiff's personal knowledge. Where

---

[2] Some portions of plaintiff's declaration also contain hearsay.

defendant responds to plaintiff's facts that rest on these portions merely by denying that the facts are supported by admissible evidence, those facts are deemed admitted. See LR56.1(a).

Defendant also notes that some of plaintiff's exhibits are her own unsworn statements in postal service forms: exhibits 5, 9, 11, 13, 17, 20, 28, 30, 34, 38, 40, and 42. As this court stated in its ruling on defendant's first motion for summary judgment, these forms are not sworn affidavits, unsworn declarations that subject plaintiff to the penalties of perjury, or otherwise admissible evidence, and thus cannot be relied upon as support in her statement of material facts. See Fed. R. Civ. P. 56(e); 28 U.S.C. § 1746; Woods v. City of Chicago, 234 F.3d 979, 987-88 (7th Cir. 2000), cert. denied, 122 S. Ct. 354 (2001).

## II. Factual Background

Plaintiff began working for the Postal Service in 1985, and has been a clerk since 1988. Between 1997 and 2000, plaintiff worked at the AMC O'Hare postal facility in Chicago, Illinois, where she primarily worked on a flat sorter machine. On March 10, 1998, Darlene Brooks became plaintiff's supervisor. According to plaintiff, at that time plaintiff informed Brooks that she had a hearing impairment; Brooks does not recall plaintiff doing so.

In the months that followed, Brooks periodically sent plaintiff out of her unit of assignment to work in other areas of the postal facility. In March 1998, Brooks threatened plaintiff with discipline if plaintiff refused to work overtime. Although defendant disputes that the following incidents occurred, according to plaintiff, in March 1998 Brooks also accused plaintiff, in front of co-workers, of unnecessarily stopping the flat sorter machine; issued her a warning letter for failing to follow instructions; and shouted instructions in her face.

On March 30, 1998, plaintiff requested an appointment with a Postal Service EEO

3

counselor, alleging discrimination based on her hearing impairment. Later in 1998, plaintiff filed EEO complaints of discrimination based on her hearing impairment.

On April 7, 1998, Brooks told plaintiff at various times during the day that her time card was missing, that the time card indicated that plaintiff had punched out for the day, and told her that plaintiff was not showing up on the Operations Screen; Brooks later produced plaintiff's time card. Also in April 1998, Brooks instructed one of plaintiff's co-workers not to talk to plaintiff, instructed plaintiff not to talk to the other employees, directed plaintiff to load mail while her machine was stopped (which plaintiff characterizes as an extra duty), instructed her not to sit at her console while the machine was broken down, refused to allow plaintiff to stop keying when her hands were sore and swollen from an extended period of keying, and assigned plaintiff to key for entire shifts. According to plaintiff, in April 1998 Brooks followed her as she pushed tubs of mail from one end of the flat sorter machine to the other.

Plaintiff also claims that Brooks threatened her with discipline when plaintiff took notes each time the machine broke down. On two occasions, Brooks left plaintiff's name highlighted on the computer in the middle of the unit. Brooks also "made clock rings" with plaintiff's time card.[3]

On April 18, 1998, plaintiff received a "five-day absence notice." Plaintiff submitted medical documentation to explain her absence. In May 1998, supervisor Anton Zoch issued plaintiff a "Letter of Removal." Zoch told plaintiff that he was not allowed to call plaintiff about her documentation, and referred her to supervisor Melvin Anderson. Anderson told plaintiff that her request for leave was denied because he could not read her medical documentation. Zoch

---

[3] Plaintiff does not explain what this means.

4

had accepted similarly legible documents from plaintiff in the past. According to defendant, plaintiff's request for leave was eventually granted, after plaintiff provided adequate medical support. Plaintiff claims that her pay was reduced from a level six to a level five, and her job status was lowered when she was unable to work in April 1998. She does not explain what these reductions in pay and status entailed.

On April 23, 1998, Brooks required plaintiff to punch out early for not following instructions, and had her escorted out of the facility by the postal police. According to plaintiff, Brooks had not given her sufficient time to complete the assignment as instructed. After punching out on April 23, 1998, plaintiff did not report for work again until June 1998, even though her leave requests for that period were denied.

From 1998 to March 2000, Anderson denied some of plaintiff's requests for injury compensation leave, family medical leave, and sick leave, designating these absences as "absent without leave." Plaintiff does not elaborate as to how many times this happened, or the circumstances of the denials.

In June 1998, plant manager Gerald Kubick, Anderson, Brooks, Zoch, and steward James Dixon met with plaintiff. At that meeting, the participants discussed letters plaintiff and her mother had written, medical documentation plaintiff had submitted relating to stress and depression, and plaintiff's EEO and postal police complaints. The managers also made jokes, refused to grant plaintiff leave under the Family and Medical Leave Act, advised plaintiff to trust Brooks, and instructed plaintiff not to write more letters.

On September 22 or 23, 1998, plaintiff submitted two requests for leave to go home early due to illness. According to plaintiff, supervisor Martha Womack initially verbally granted the

requests, then later rescinded her approval. Defendant denies that Womack had ever granted plaintiff's request. According to defendant, plaintiff's first request was denied because plaintiff was needed at work, and her second request was denied because plaintiff had insufficient leave. Womack told plaintiff that she could not allow an employee leave without pay, and that she always checked to make sure an employee had sufficient leave available. Plaintiff left work without approval, and received a seven-day suspension.

According to plaintiff, she was required to work overtime, despite a medical restriction,[4] on at least two occasions. One such occasion was October 10, 1998. Defendant denies that plaintiff was required to work in excess of her scheduled number of hours at that time, noting that when plaintiff was required to work on her regular day off, she was given a different day off in return. Anderson also revised the holiday schedule to require plaintiff to work on January 16, 1999.

Supervisor Daniel Christensen lectured all the employees, including plaintiff, about taking breaks at either 9:00 or 11:10, but not both times. Christensen designated plaintiff as "absent without leave" when she reported late to work, and denied her leave requests to cover that time. Christensen was aware that plaintiff had made EEO complaints against other supervisors.

On March 22, 1999, Christensen required plaintiff to work in the express mail unit. While plaintiff was there, Brooks came to plaintiff's work area, stood within one foot of her, and stared at her.

In July 1999, supervisor Womack marked plaintiff as absent without leave when plaintiff

---

[4] This medical restriction appears to be unrelated to plaintiff's hearing impairment.

6

took her scheduled vacation. Later that month, Womack charged plaintiff with unscheduled leave when plaintiff reported late to work. Womack had approved employee Ophelia Almon's same-day leave request, allowing Almon to leave early.

Supervisor Pamela Simmons did not allow plaintiff to play a radio, but allowed other employees to do so. According to plaintiff, Simmons confronted her and challenged her to a fight; defendant denies that this incident occurred.

### III. Discussion

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with [any] affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must draw all reasonable inferences in favor of the nonmoving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party bears the initial burden of demonstrating that no material issue exists for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion, the nonmoving party must offer specific facts demonstrating that a material dispute exists, and must present more than a scintilla of evidence to support its position. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

#### A. Discrimination

The Rehabilitation Act prohibits employers that receive federal financial assistance from discriminating against qualified employees based on disability. See 29 U.S.C. § 794(a). To survive a defendant's motion for summary judgment, a plaintiff must meet the threshold burden of establishing that she is disabled under the Rehabilitation Act. Roth v. Lutheran Gen. Hosp.,

7

57 F.3d 1446, 1454 (7th Cir. 1995). An employee is considered disabled under the Act if she has "(1) a physical or mental impairment which substantially limits one or more of the major life activities; (2) a record of such an impairment; or (3) if [she] is regarded as having such an impairment." Id. "Major life activities" are functions "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." Id. Not every impairment that affects a major life activity is a substantially limiting impairment: the impairment must be significant. Id. The question of whether an employee is disabled under the Act "is an individualized one, and must be determined on a case-by-case basis." Id.

Defendant contends that plaintiff has failed to produce sufficient evidence of a disability to entitle her to relief under the Act. The court agrees. Plaintiff bases her discrimination claim under the Rehabilitation Act on a hearing impairment, but offers no admissible evidence that shows the extent to which that impairment affects a major life activity. Plaintiff only briefly mentions her hearing impairment in a single paragraph of her Statement of Material Facts:

> On March 10, 1998 Darlene Brooks, (hereinafter, "SDO Brooks") became Plaintiff's supervisor at which time the Plaintiff notified Ms. Brooks of her disability...Brooks does not deny (although she cannot recall) that Plaintiff informed her that she had a hearing impairment...After Plaintiff informed Brooks of her hearing impairment, Brooks gave Plaintiff a look that implied that Brooks did not like anyone that was not "normal."

In her brief in opposition to the motion for summary judgment, plaintiff argues that she has shown she is disabled through medical records contained in exhibit 36 to her statement of material facts.

The medical records contained in exhibit 36 are not cited in plaintiff's statement of material facts. This omission contravenes Local Rule 56.1's requirement that parties supply the

facts, along with supporting references to the record. This requirement significantly benefits the court, whose role in ruling on a motion for summary judgment "is not to sift through the evidence." See Waldridge v. American Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). Further, this requirement serves the purpose of "alert[ing] the court to precisely what factual questions are in dispute and point[ing] the court to the specific evidence in the record that supports a party's position on each of the questions." Id. at 923. The factual statements and references to the record "are, in short, roadmaps, and without them the court should not have to proceed further, regardless of how readily it might be able to distill the relevant information from the record on its own." Id.

Since plaintiff is a pro se litigant, the court could overlook her failure to describe her disability in her statement of facts. However, plaintiff's presentment of her medical records has a more significant flaw: plaintiff fails to authenticate or offer a foundation for these records. Documents and exhibits presented as supporting material on summary judgment must be properly authenticated and admissible. See Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000), cert. denied, 122 S. Ct. 354 (2001). Plaintiff has presented no affidavits to establish the authenticity of, and foundation for, her medical records. Therefore, the court must disregard these records.[5]

Thus, plaintiff has offered no evidence showing that she has a hearing impairment that

---

[5] The court notes that even if these records were properly in evidence, they would appear to be inconclusive on the issue of whether plaintiff's hearing impairment was substantially limiting. The records, covering a period from approximately 1988 to 1997, indicate that plaintiff had hearing problems in one or both ears, for which she wore a hearing aid. The records do not show whether these hearing problems substantially limited one or more of plaintiff's major life activities.

9

substantially limits one or more of her major life activities. Of course, her impairment need not actually be substantially limiting, if her employer perceived it to be so. See Sanchez v. Henderson, 188 F.3d 740, 744-45 (7th Cir. 1999) (citing Johnson v. American Chamber of Commerce Publishers, 108 F.3d 818 (7th Cir. 1997)). "[T]he plaintiff must be regarded as having a substantial impairment, not just any impairment." Id. at 745. Although plaintiff offers evidence that she placed Brooks on notice that she has a hearing impairment, she offers no evidence that would show that Brooks perceived this impairment to be substantially limiting. Since plaintiff cannot show that she was actually disabled under the Rehabilitation Act, or that she was perceived to be disabled, defendant is entitled to summary judgment on plaintiff's discrimination claim brought under the Act.

### B. Retaliation

Defendant also contends that it is entitled to summary judgment on plaintiff's retaliation claim. To survive summary judgment where, as here, a plaintiff has no direct evidence of retaliation, the court looks to the McDonnell Douglas analytical framework. Under that analysis, a plaintiff must first establish a prima facie case of retaliation by demonstrating that (1) she engaged in statutorily protected expression; (2) she was performing her job satisfactorily; (3) she suffered an adverse employment action; and (4) no other similarly situated employee who did not file a complaint was subject to the adverse employment action. See Stone v. City of Indianapolis Pub. Utils. Div., 281 F.3d 640, 644 (7th Cir. 2002), petition for cert. filed (U.S. June 28, 2002) (No. 02-16). If the plaintiff makes this showing, the burden shifts to the defendant to state a legitimate reason for the action. See id. If the defendant does so, the burden shifts back to the plaintiff to show that the defendant's stated reason is pretextual. See id.

Defendant does not dispute that plaintiff filed complaints alleging discrimination based on her hearing impairment, or that those complaints constituted statutorily protected expression. As this court determined in its ruling on defendant's first motion for summary judgment, some of the actions about which plaintiff complains could constitute adverse employment actions. For example, plaintiff's 1998 seven-day suspension could constitute an adverse employment action. See Biolchini v. General Elec. Co.,167 F.3d 1151, 1154 (7th Cir. 1999) (assuming that one-week disciplinary suspension was a materially adverse employment action). In addition, repeatedly denying requests for leave with pay, resulting in a loss of pay to the extent that an employee has effectively been demoted, could constitute an adverse employment action. See Rabinovitz v. Pena, 89 F.3d 482, 488 (7th Cir. 1996). Finally, ordering other employees not to talk to a co-worker could constitute an adverse employment action, if it rose to the level of shunning. See McKenzie v. Ill. Dep't of Transp., 92 F.3d 473, 485 (7th Cir. 1996). However, as with plaintiff's retaliation claims based on complaints of race and gender discrimination, here plaintiff fails to offer evidence that no other similarly situated employee who did not file a complaint of discrimination was suspended, denied leave requests, or shunned.

Plaintiff offers no proper evidence relating to other employees who left with or without permission, to show that she was treated differently than similarly situated employees with regard to her 1998 suspension. Plaintiff's statement of facts notes only that "[p]laintiff was treated differently than other employees such as Toya Scott and Valerie Lewis (black, female non-disabled), that left work and took Leave Without Pay." This statement cites as support plaintiff's declaration, in which plaintiff fails to offer a foundation that shows how this information was within plaintiff's personal knowledge. Moreover, the statement fails to indicate whether Scott

11

and Lewis had previously filed complaints or the circumstances under which they left work. Since plaintiff has failed to show that defendant treated plaintiff differently than other similarly situated employees in suspending her, her retaliation claim fails, to the extent that it is based on plaintiff's suspension.

Nor does plaintiff show that similarly situated employees were treated differently in response to their leave requests. Plaintiff claims that three supervisors[6] unfairly denied her leave requests. First, plaintiff contends that supervisor Anderson disapproved leave requests submitted by plaintiff between 1998 and March 2000, but that he approved leave requests of employee Belinda Carroll-Nelson. Plaintiff cites her own declaration in support of this statement, but fails to indicate her basis of knowledge regarding Carroll-Nelson's requests, or whether Carroll-Nelson had previously made complaints.

Plaintiff also claims that supervisor Womack unfairly denied plaintiff's leave requests. Plaintiff states that Womack refused to allow her to use leave to make up time when she was tardy, while Womack approved employee Ophelia Almon's same-day request to leave work early. Plaintiff states, without support, that Almon had not filed an EEO claim. Even if there were admissible evidence showing that Almon had not filed any complaints, however, Almon nevertheless is not a similarly situated employee. Asking permission to leave early is quite a different situation from asking to cover a tardy arrival after the fact. Although plaintiff claims that Womack also approved scheduled leave for employee Belinda Carroll-Nelson after Carroll-Nelson arrived late for work, plaintiff offers no admissible evidence in support of this claim.

---

[6] Plaintiff alleges that a fourth supervisor, Zoch, also denied plaintiff's leave requests in January 1999, but Zoch apparently later approved the requests.

12

Finally, plaintiff claims that Womack also charged plaintiff as absent without leave when plaintiff took her scheduled vacation. Plaintiff claims in conclusory fashion that Womack "did not do this to anyone else," but fails to provide details as to the identities of these employees, and whether they had previously filed complaints.

Third, plaintiff states that supervisor Christensen also disapproved plaintiff's leave requests to cover time when she arrived at work late. She points to Christensen's deposition testimony in which he testified that he could not recall the names of any other employees on Tour 3 for whom he had disapproved a request to use leave when they were late, but offers no evidence that Christensen treated employees who had not filed complaints differently. Because plaintiff does not show that any of these supervisors treated other similarly situated employees who had not filed complaints differently in the way they handled leave requests, plaintiff's claim of retaliation based on the denials of her leave requests fails.

Finally, as to plaintiff's claim that other employees were not allowed to talk to her, plaintiff offers evidence that Brooks reprimanded employee Tia Holmes for speaking with plaintiff in April 1998. However, plaintiff's statement that Holmes subsequently began speaking with another employee without receiving a reprimand is not supported by admissible evidence. In addition, there is no evidence indicating whether Holmes or the employee with whom she spoke had previously filed any complaints. Plaintiff's statement of facts lists Regina Walker, Melancy Jackson, Laura Heddoui, Tia Holmes, Nora Salas, Jessie Seals, and Joel Webb as being allowed to talk to each other without being threatened with discipline by Brooks, but again offers no admissible evidence in support of this claim, and does not indicate whether these employees had previously filed complaints. Plaintiff states, in conclusory fashion, that "Brooks did not

13

isolate any other employees." However, plaintiff's only support for her claim that talking among employees was not generally discouraged, is Brooks' testimony that it would not violate a regulation for keyers to talk to each other while a jam in the machine was being cleared, if they had already fully loaded the machine with mail for when it started again. This is not evidence that keyers in that situation would not nevertheless be discouraged from talking to each other while a jam was cleared. Nor does plaintiff present evidence as to whether employees were allowed to talk when their machine was not jammed.

Plaintiff's evidence of co-workers being discouraged from talking to plaintiff hardly rises to the level of shunning, and plaintiff provides no evidence that other employees were treated differently than she was. Therefore, if plaintiff's claim that defendant directed other employees not to talk to her even amounted to an adverse action, her retaliation claim based on this contention does not survive summary judgment.

Plaintiff has failed to offer evidence that no other similarly situated employee who did not file a complaint of discrimination was suspended, denied leave requests, or shunned. Since plaintiff has failed to establish this element of the prima facie case, her retaliation claim does not survive summary judgment under this analysis. See Hilt-Dyson, 282 F.3d at 465 (the inability to prove even a single element of the prima facie case is fatal to a retaliation claim).

As she did in relation to her Title VII claims, plaintiff urges this court to consider the entire course of conduct that she alleges when analyzing her retaliation claim under the Rehabilitation Act, rather than merely the individual incidents that may constitute materially adverse employment actions. To maintain an actionable claim under a theory that defendant's conduct created a hostile work environment, and thus constituted retaliation in violation of the

14

Rehabilitation Act, plaintiff must demonstrate harassment "that is sufficiently severe or pervasive to alter the conditions of [her] employment." See Silk v. City of Chicago, 194 F.3d 788, 804 (7th Cir. 1999). The working environment must be both objectively and subjectively offensive. Id. at 805. Factors relevant to the inquiry of whether conduct creates an objectively hostile work environment include the "frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Id. at 804.

Plaintiff argues that when considered collectively, the various supervisors' actions she alleges amount to severe and pervasive harassment. These actions include removing plaintiff from her unit of assignment to work in other areas; accusing plaintiff of shutting off a machine; issuing her a warning letter for failing to obey instructions; directing her to perform minor extra duties; reprimanding her for idleness; keeping her at the same assignment for an entire shift; following her; shouting at her; requiring her to leave work early; lecturing her (and other employees) about taking too many breaks; requiring her to work two of her regular days off,[7] for which she apparently was paid and which apparently did not result in a change of responsibilities; and refusing to let her play a radio at work. As this court concluded in its ruling on defendant's first motion for summary judgment, relating to plaintiff's Title VII claims, the

---

[7] Although plaintiff claims that supervisors Melvin Anderson and Christine Allen "continuously required Plaintiff to work overtime, regardless of medical restrictions," that Anderson required plaintiff to work overtime and holidays "on many occasions," and that Anderson required plaintiff to work overtime "throughout 1998, 1999, and 2000," plaintiff offers no specific evidence to support claims other than that she was required to work overtime on October 10, 1998 and January 16, 1999. According to defendant, plaintiff was given different days off at those times, resulting in no gain in weekly hours, although defendant offers proper evidence on this point only as to plaintiff's October 10, 1998 claim.

incidents plaintiff alleges, even considered collectively, are not sufficiently severe and pervasive to be actionable. Accordingly, summary judgment is entered in favor of defendant on plaintiff's retaliation claim in Count II.

**ORDERED:** Defendant's motion for summary judgment [32-1] is granted.

ENTER:

George W. Lindberg
Senior United States District Judge

DATED: **OCT 0 2 2002**